# IN THE UNITED STATED DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

RENE ZELT & TRAYCE ZELT,
individuals,

    Plaintiffs,

vs.

XYTEX CORPORATION, a Georgia
Corporation; XYTEX CRYO
INTERNATIONAL LTD., a Georgia
Corporation; MARY HARTLEY, an
individual; J. TODD SPRADLIN, an
individual; and DOES 1-25, inclusive,

    Defendants.

    Defendants.

Case No: _____

**JURY TRIAL DEMANDED**

**COMPLAINT FOR DAMAGES**

(1) FRAUD

(2) NEGLIGENT
 MISREPRESENTATION

(3) PRODUCTS LIABILITY –
 STRICT LIABILITY

(4) PRODUCTS LIABILITY –
 NEGLIGENCE

(5) BREACH OF EXPRESS
 WARRANTY

(6) BREACH OF IMPLIED WARRANTY

(7) BATTERY

(8) NEGLIGENCE

(9) UNFAIR BUSINESS PRACTICES

(10) SPECIFIC PERFORMANCE

(11) FALSE ADVERTISING

(12) PROMISSORY ESTOPPEL

(13) UNJUST ENRICHMENT

## COMPLAINT

  Come now Plaintiffs RENE ZELT and TRAYCE ZELT and demand a jury trial

and plead as follows.

## JURISDICTION AND VENUE

This is a civil action between citizens of different states.  This Court has original jurisdiction pursuant to Title 28 of the United States Code, Section 1332 – Diversity of Citizenship with an amount in controversy exceeding the sum or value of $75,000.

Venue within this jurisdiction is proper pursuant to Title 28 of the United States Code, Section 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims alleged herein occurred within this judicial district.

## PARTIES

1.     Plaintiffs, RENE ZELT and TRAYCE ZELT ("Plaintiffs"), reside in Texas, and have two children, ¬¬A.Z. and B.Z., who were both conceived as a result of their purchase of semen from Defendants Xytex Corporation et al.. Plaintiffs are citizens of the State of Texas.

2.     Defendant Xytex Corporation ("Xytex" or "Xytex Corporation") is a corporation organized under existing under the laws of the State of Georgia with its principal place of business in Atlanta, Georgia.  The Xytex Corporation is a for-profit seller of human semen.  Plaintiffs acquired human semen for artificial insemination, and at all times relevant herein, all Plaintiffs were sold human semen by Defendant Xytex Corporation.

3.      Defendant Xytex Cryo International LTD ("Xytex International") is a corporation organized and existing under the laws of the state of Georgia with its principal place of business in Atlanta, Georgia.  Xytex International is a business that, at all times relevant, sold human semen to Plaintiffs through its subsidiary, Defendant, Xytex Corporation.  The selling and promotion of such human semen included, but was not necessarily limited to, the testing, collection, promotion, advertising, marketing, sales and distribution of donor semen.  Additionally, Xytex International, through Defendant Xytex Corporation, supervised and coordinated the evaluation and selection of semen donors, the collection of which was advertised, marketed, sold, and promoted as a carefully curated group of extraordinarily smart, educated, and healthy persons.

4.      Defendant, Mary Hartley, and Does 1 through 10, are, and were at all times relevant herein, employees, agents, owners, and/or directors who worked at, or were associated with, the Atlanta Office of Defendants, Xytex Corporation and Xytex International.  Defendant Mary Hartley, and Does 1 through 10, also recruited Donor #9623 Aggeles, and promoted Donor #9623 Aggeles to all Plaintiffs through various mediums, on various dates, in various ways. Defendant Hartley is a resident and citizen of the State of Georgia.

5.      Defendant, J. Todd Spradlin, and Does 11 through 15, are, and were at all times relevant herein, employees, agents, owners, directors, and/or doctors, physicians, medical professionals, examiners, and assistants who were associated with, the Atlanta

Office of Defendants, Xytex Corporation and Xytex International. Defendant Spradlin is a resident and citizen of the State of Georgia.

6.     Defendants, Does 16 through 20, are, and were at all times relevant herein, distributors of donor semen, and/or companies, entities, or corporations that assisted the Xytex Corporation, and Xytex International, in selling and distributing human semen to all Plaintiffs for purposes of artificial insemination.

7.     Defendants, Does 21 through 25, are, and were at all times relevant herein, persons who assisted the Xytex Corporation, and Xytex International, in selling and distributing human semen to all Plaintiffs for purposes of artificial insemination.

8.     Plaintiffs do not know the true names of the defendants sued herein as Does 1 through 25, inclusive.  Plaintiffs allege that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and caused injuries and damages to all Plaintiffs as set forth herein.

9.     All Defendants herein acted as the agent, servant and employee and/or in concert with each of the other said Defendants in doing the acts herein alleged.

## FACTUAL ALLEGATIONS

## I.     INTRODUCTION.

10.    The factual allegations section of this complaint will serve as a chronological presentation of the ways in which the Plaintiffs were injured and deceived by the Xytex Corporation.  It will also seek to shed light on the despicable behavior of

the Xytex Corporation. Xytex continues to act with callous disregard for the safety of those who are exposed to its products, and, in its unchecked and unregulated position, it will continue to disrupt and destroy innocent lives if it not held accountable for its conduct.

11.    In this case, the Xytex Corporation sold the Plaintiffs sperm from Xytex Donor #9623, James Christian Aggeles, a diagnosed schizophrenic, and a convicted felon. James Christian Aggeles completely fabricated his application to become a Xytex sperm donor, and the Xytex Corporation, and the other Defendants herein, actually assisted Mr. Aggeles in falsifying the information that was presented to plaintiffs and the public as true.

12.    Since the very beginning, before James Christian Aggeles ever went to the Xytex office to fill out his Xytex sperm donor application on October 18, 2000, there were easily accessible, irrefutable, medical documents  establishing that he had already been diagnosed by the medical professionals at Atlanta Regional Hospital, and the Northwest Georgia Regional Hospital, with Schizophrenia, Narcissistic Personality Disorder, a drug induced psychotic disorder, and significant grandiose delusions.

13.    Additionally, James Christian Aggeles did not have even one college degree when he applied to become a Xytex sperm donor on October 18, 2000, and he did not a earn a college degree until 2015.  Nevertheless, the public profile for Donor #9623, during all times relevant herein, represented that James Christian Aggeles had a Bachelor's

Degree, a Master's Degree, and that he was working towards his Ph.D. in artificial intelligence.  The Xytex Corporation, and other Defendants, did absolutely nothing to investigate the educational claims that James Christian Aggeles made when he applied to become a Xytex sperm donor.  A simple phone call to the relevant universities would have sufficed, but the Xytex Corporation did nothing.  Instead of investigating Mr. Aggeles' claims regarding his level of education, the Xytex Corporation decided to promote Donor #9623 as a college-educated person, with a genius level IQ of 160– all of which was fabricated by Xytex Corporation and its employees or which Xytex and its employees had no reasonable basis to believe was true.

14.    Furthermore, the Xytex Corporation made no effort to investigate Mr. Aggeles' criminal history of arrests and convictions.  Mr. Aggeles committed a residential burglary in 2005, which was before the Xytex Corporation sold sperm to the Plaintiffs. Mr. Aggeles spent 8 months in custody for that crime, and this information was all public record, easily accessible, and irrefutable evidence that Aggeles was not the highly desirable and suitable sperm donor represented by Defendants.  Nevertheless, the Xytex Corporation never made any effort to determine if it was selling the sperm of a convicted criminal before promoting the sperm to Plaintiffs and many other clients.  Instead of investigating the claims that Xytex Corporation and Defendants made in the online profile of  James Christian Aggeles, Xytex promoted Donor #9623 as one of their best donors.

Despite readily available evidence to the contrary, Xytex promoted James Christian Aggeles as a man of high integrity, extremely intelligent, and college educated.

15.    As a result of the false and reckless claims and representations made by Xytex Corporation and the other Defendants about the sperm of Donor #9623, James Christian Aggeles was one of Xytex's most prolific donors. Defendants admit that as a result of sales to Xytex clients, Aggeles is the biological father of at least 36 children. The mental illnesses that James Christian Aggeles suffers from are genetic, hereditary, and are passed from one generation to the next.  Even after Xytex was confronted with evidence showing the falseness of its representations about Aggeles, the Xytex Corporation denied responsibility and willfully refused to advise affected parents about Aggeles's mental illnesses, behavioral problems, and criminal history and the risk of mental illness in their children. Xytex has provided no help to the parents who are now incurring extraordinary medical and financial expenses associated with the mental illnesses that are developing in their children.  After this brief introduction, the factual allegations section will now focus on what Xytex said it would do, what actually happened, and what Xytex has done since the truth about Donor #9623, James Christian Aggeles, was been fully exposed.

## II.    WHAT THE XYTEX CORPORATION SAID IT WOULD DO.

16.    Xytex International, through its subsidiary, the Xytex Corporation, sells human semen for the purposes of artificial insemination.  The Xytex Corporation's

website declared at all relevant times that it is "an industry leader in reproductive services with a commitment to unsurpassed quality controls," and that the donors' personal health and family history are carefully screened through a comprehensive medical process developed by the U.S. Centers for Disease Control and Prevention.  Additionally, the website proclaimed that the Corporation's "FDA-mandated screening and testing also ensures our donors' continued good health."  Xytex represented in the website that its screening process was so thorough that a mere "1 percent of the men that inquire about being a donor candidate are evaluated," and, ultimately, "[f]ewer than 5 percent of the candidates become donors."

17.    The message that the Xytex Corporation presented to the public and prospective clients regarding donor screening was clear - Xytex assured and promised its clients that it would exercise the utmost care to scrutinize the medical, criminal, and social history of its donors, because, as Xytex stated, it wanted its "clients to make the most informed decision possible when selecting a donor."  Xytex declared that it was "about people and creating families," and that purchasers would "receive the best possible match to a Xytex donor."  This was how Xytex presented itself to the public and prospective clients.

A.    **THE REPRESENTATIONS MADE BY XYTEX REGARDING EXAMINATION AND QUALIFICATION OF SPERM DONORS.**

18.   The website for the Xytex Corporation made the following assertions to Plaintiffs, upon which all Plaintiffs relied, regarding the examination, screening, and qualification of sperm donors:

(a)   Fewer than 5% of applicants actually became Xytex sperm donors.

(b)   <u>All applicants</u> went through the same <u>rigorous qualification procedure.</u>

(c)   Applicants were subjected to a <u>thorough initial evaluation</u>, and they were subsequently required to submit to "periodic updates throughout the year."

(d)   <u>Trained counselors</u> subjected <u>all applicants</u> to <u>extensive interviews</u> that were focused on the applicants' personality, behavior and health.

(e)   Applicants underwent a <u>comprehensive physical exam</u> for physical abnormalities and evidence of infectious diseases, and samples of applicants' semen, urine, and blood were collected for laboratory analysis.

(f)   The Xytex <u>medical director reviewed all of the medical information</u> in a process that took about two months to complete.

(g)   Xytex's procedure for <u>qualifying a donor was very intense and arduous</u> and generated voluminous medical, psychological, genetic and social information about donors and their families.

(h)   Xytex exceeded its professional and ethical responsibilities, as the quality of its <u>clinical services</u> were <u>validated by state and national government agencies.</u>

(i)    All Xytex donors "are enrolled in or have graduated from some of the country's premier universities and medical schools."

(j)    When a donor participated in the semen donation program, Xytex required him to undergo to repeated lab testing for infectious diseases.

(k)    Every six months, donors were subjected to additional physical examinations, and they were required to update their medical history.

(l)    If there were any change in a donor's status, Xytex would update the donor's profile with the new information.

(m)    When Xytex "learns new information about a donor (either from the donor or from a recipient of his semen) that is deemed medically significant by the Medical Director, a notice is sent to the inseminating doctor and to any patient who used semen from the donor."

19.    These statements from Xytex, included as part of the paragraph above, constitute some of, but not all, of the representations upon which Plaintiffs relied in choosing to purchase sperm from the Xytex Corporation.

## III.    WHAT XYTEX ACTUALLY DID – THE RECRUITEMENT AND PROMOTION OF DONOR #9623, JAMES CHRISTIAN AGGELES.

20.    Prior to even considering selling his sperm to Xytex, James Christian Aggeles had been hospitalized, as an adult, for mental health reasons on at least two separate occasions.  During these hospitalizations, which sometimes lasted for more than

two weeks, the medical staff at Atlanta Regional Hospital and Northwest Georgia Regional Hospital diagnosed Mr. Aggeles with psychotic schizophrenia, Narcissistic Personality Disorder, and significant grandiose delusions.  He was prescribed anti-psychotics, including Zyprexa and Depakote.

21.    After these mental health hospitalizations and diagnoses, on October 18, 2000, James Christian Aggeles went to the Xytex office in order to make money selling his sperm.  After dropping out of school without a degree, he saw it as a fairly easy way to supplement his income from waiting tables and working as a janitor.  On his first visit, Mr. Aggeles told Defendant Mary Hartley, a Xytex employee, that he thought his IQ was about 130, but Mary Hartley told Aggeles that he was a genius with an IQ of about 160. She also told him that more educated donors made more money selling their sperm, and that Xytex was accustomed to donors with higher education.  James Christian Aggeles filled out a Xytex questionnaire, and from that point on (including all times relevant herein), the profile for Xytex sperm Donor #9623 represented as fact that the donor had an IQ of 160, multiple college degrees, a clean mental health history, and no criminal background.  Again, at all times relevant herein, Xytex or any of its employees or agents could have conducted a simple internet Google search and discovered through publicly accessible, indisputable, medical and professional documents that James Christian Aggeles was a diagnosed Schizophrenic, and a convicted felon with no college degree.

22.    Mr. Aggeles, by his own admission, lied about his mental health history, and his education when he filled out the Xytex questionnaire, but no one at Xytex ever questioned him about the veracity of the medical, social, and criminal history that he provided.  Defendant Mary Hartley knowingly and willfully encouraged Aggeles to lie and greatly exaggerate his IQ and education.  A physician on behalf of Xytex gave Mr. Aggeles a 10-minute physical examination, during which the doctor did not ask about Aggeles's physical and mental health history.  Aggeles and the physician never discussed the information on the falsified questionnaire. Approximately two weeks later, James Christian Aggeles, now Donor #9623, was approved to be a Xytex sperm donor, and he started donating sperm immediately –contrary to the claim on Xytex's website that the Xytex "medical director reviews all of the medical information in a process that takes about two months to complete."

23.    During the time period that Mr. Aggeles regularly sold sperm to Xytex, he was hospitalized for mental health reasons and arrested on numerous occasions.  Publicly accessible documents establish that before Xytex sold Plaintiffs Donor #9623's sperm, Mr. Aggeles had a series of arrests for burglary, trespassing, DUI, and disorderly conduct. Also, before the Plaintiffs in this case were sold sperm from Mr. Aggeles, he had been hospitalized several times for severe suicidal outbursts and psychotic episodes.  In 2002, Mr. Aggeles was placed on full Social Security Disability for his mental illnesses, he was diagnosed as having schizophrenic symptoms, and **he was found to be disabled**.

Throughout this time period, Mr. Aggeles was selling his sperm to the Xytex Corporation, and Xytex was promoting Donor #9623 as a desirable, healthy, intelligent, and highly educated donor.

24.    From the year 2000 to 2016, and throughout that period, the Xytex Corporation, and other Defendants, relentlessly sold and promoted the sperm of Donor #9623, James Christian Aggeles.  Mr. Aggeles fathered least 36 children through sperm sold by the Xytex Corporation.  Xytex Corporation promoted the fact that the sperm of Donor #9623 was successfully inseminating women, and it therefore sold well.  The Xytex Corporation had a commercial motive to maximize the sale of Mr. Aggeles' sperm, and it succeeded in making Donor #9623 one of the company's most prolific donors through knowing and reckless false statements about Mr. Aggeles's suitability and desirability as a sperm donor. The Xytex Corporation, with the knowledge and participation of all other Defendants, , declared in their websites and materials, and in the statements that they made directly to Plaintiffs, that James Christian Aggeles had the following characteristics:

- He had a Bachelor's Degree.

- He had a Master's Degree.

- He was working towards attaining his Ph.D. in Neuroscience Engineering.

- He had an IQ of 160.

- He had an impressive health history.

- He was one of their most popular donors.

- He was so popular that his sperm was rarely available.

- His child and adult photographs were accurate and authentic.

25.    Defendants made these representations to Plaintiffs, and Plaintiffs reasonably relied on them to their detriment, even though Defendants, notwithstanding their proclamations regarding their "unsurpassed quality controls," did absolutely nothing to verify the validity of the representations they were making about Donor #9623.

26.    In fact, the truth about Donor #9623 was very different from what Defendants represented about him.  In a recent interview, Donor #9623 stated that:

- He first went to the Xytex office in late 2000 in order to make money selling his sperm.

- When he first visited the Xytex office, he filled out a basic Questionnaire, but he was not asked any follow-up questions or any questions intended to verify his answers, and he was in the Xytex office for a grand total of 30 minutes.

- He was never asked for his medical records.

- He was never asked to sign a release for his medical records.

- He was never asked about his mental health history.

- He never spoke to a psychologist or psychiatrist representing Xytex.

- He specifically lied about his mental health history on the Questionnaire – as he had actually been hospitalized for mental health reasons on two separate occasions, and had been prescribed anti-psychotics, including Zyprexa and Depakote.

- He was never asked about his criminal history.

- He was never asked to provide a driver's license, or any other proof of identification.

- He lied about his education.  He said that he had a BS from the University of Georgia, even though he did not; he said that he had a Masters Degree from the University of Georgia, even though he did not; he said that he was enrolled in a Ph.D. program in Artificial Intelligence, even though he was not.

- He went to the Xytex office in Atlanta to sell his sperm, and his main point-of-contact, for almost 14 years, was Defendant Mary Hartley.

- He told Mary Hartley that he thought his IQ was 130, and Mary Hartley told him that he was probably a genius with an IQ of 160.  Mary Hartley told him that intelligent donors, with high levels of education, did better selling their sperm.

- He was surprised that Xytex never asked him to validate his educational claims.

- He was approved to become a sperm donor approximately two weeks after his very first visit to the Xytex office.

- In 2014, after a lawsuit was filed against the Xytex Corporation that concerned Xytex sperm Donor #9623, Mr. Aggeles provided Xytex with forged graduation certificates, and Xytex accepted without question the fake documents.

- To his knowledge, Xytex never made any attempt to verify his educational history.

- He has been diagnosed with schizophrenia.

- He is a convicted felon.

- He attained his first, and only, college degree in May of 2015. Before that, he did not have any college degrees.

27.     Notwithstanding these facts, the Xytex Corporation knowingly and recklessly promoted Donor #9623 to Plaintiffs as a college educated, extremely intelligent, thoughtful, and entirely healthy. The true facts as to Aggeles's mental health and educational, criminal, and social history were readily available to Defendants , and yet they utterly failed to conduct any form of investigation into the claims made by Donor #9623. For example, a simple phone call to the University of Georgia would have shown that Donor #9623 lied on the Questionnaire about possessing a college degree. A simple Google search would have revealed Mr. Aggeles's arrest history, and the publicly accessible documents that then showed, as early as 2002, that Mr. Aggeles had been arrested and hospitalized for mental health reasons, and that he had been diagnosed with serious mental illnesses. In failing to conduct any investigation whatsoever, while

simultaneously peddling the notion that their procedures for donor screening were rigorous and comprehensive, the Defendants acted negligently, recklessly, and with callous disregard for the safety of Plaintiffs, and the children that were conceived as a result of the misrepresentations.

28.    The credentials for Donor #9623, James Christian Aggeles, were completely falsified, but Xytex, Defendants Mary Hartley and James Spradlin, and others promoted this donor by telling Plaintiffs that Donor #9623 was one the most popular donors in the Xytex sperm donor panel, and they told Plaintiffs that Donor #9623 was so popular that his sperm was rarely available.  The facts pertaining to the Plaintiffs are represented below.

## IV.    RENE ZELT & TRAYCE ZELT.

29.    Plaintiffs, Rene Zelt and Trayce Zelt are a same-sex couple, and they reside in the state of Texas.  In the early part of 2006, they decided to conceive children through artificial insemination.  They began doing some research online, and they discovered the website for the Xytex Corporation. Particularly, Plaintiffs were seeking to find a sperm donor with verified medical, physical, and personality attributes that complemented their own.   In reviewing the sperm donor profiles on the Xytex website, Plaintiffs were impressed by the sperm donor qualification procedures that Xytex claimed it was using. Plaintiffs especially took note of the claims on the Xytex website regarding its "rigorous qualification procedure."   Defendants intended that Plaintiffs would rely on these

representations, and Plaintiffs reasonably relied on these representations in choosing to purchase sperm from Defendants.

30.     In addition to the false representations made by Defendants on their website, Plaintiffs also reached out to Defendants directly via phone before they purchased any sperm for the purpose of artificial insemination.  In those phone calls, Defendants' representatives told Plaintiffs that Donor #9623 was a very popular donor, and that his sperm was rarely available.  Xytex made these representations to induce Plaintiffs to purchase the sperm of Donor #9623, and Plaintiffs promptly thereafter Donor #9623's sperm from Defendants. Plaintiffs also placed themselves on a waiting list for more sperm from Donor #9623.  Plaintiffs chose Donor #9623 based on Defendants' false statements that he was a Ph.D. graduate student with an IQ of 160, and was thus advertised as an extremely intelligent and educated person, which was important to Plaintiffs.  Plaintiffs also selected Donor #9623 because Defendants represented that his health history was nearly perfect – with no medical, social, or mental health issues.

31.     After making their purchases from Defendants, sperm from Donor #9623 was introduced into Plaintiff Rene Zelt on separate occasions, and she gave birth to two children, A.Z. on March 17, 2007, and B.Z. on December 11, 2009.

32.     Subsequently, in December of 2015, Plaintiffs conducted a simple Google search on their donor, Donor #9623, and they immediately discovered, through

irrefutable, publically accessible documents, that most, if not all, of the representations that Defendants and their employees had made about Donor #9623 were not true.

33.    Plaintiffs discovered that their sperm donor, Xytex Donor #9623, was a mentally ill felon.  They learned that Donor #9623 was schizophrenic, which is genetic and hereditary, thereby exposing their children to the most debilitating of mental illnesses.  They learned that Donor #9623 had dropped out of college, and that he held no degrees whatsoever.  They learned that Donor #9623 had pled guilty to residential burglary – a serious and violent crime, and a felony in most states.  They learned that the photos of Donor #9623 had been altered to remove a large facial mole.  All of this information was easily accessible through a completely rudimentary online search, as Donor #9623, his mother, and his father provided it all on websites such as Facebook, YouTube, and elsewhere.

34.    As a result of the conduct of all of the Defendants, set forth hereinabove, Plaintiffs sustained injuries in the form of physical and emotional pain and suffering.

35.    As a further result of the conduct of all Defendants, set forth hereinabove, Plaintiffs incurred costs to purchase Donor #9623's sperm and the cost of insemination, and suffered financial loss as a consequence.

36.    As an additional result of the conduct of all Defendants, set forth hereinabove, Plaintiffs have been required to, and will be required to, expend funds to evaluate and care for their children to ensure that should they become schizophrenic, they

will have the best care possible, and that, should their schizophrenia develop, they will be diagnosed and treated so as to prevent further injury to Plaintiffs.  Furthermore, one of Plaintiffs' children conceived from the sperm of Donor #9623 has already been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD), takes medication, specifically, Concerta, for ADHD, and exhibits severe developmental issues, such as insomnia, hyperactivity, anxiety, and severe mood changes.

## V.  WHAT DEFENDANTS HAVE DONE SINCE THE TRUTH ABOUT JAMES CHRISTIANAGGELES HAS BEEN EXPOSED.

37.    Although Defendants' website declared that the Xytex Corporation was all about people and creating families, and although it asserted that Defendants would inform sperm recipients when significant information about their sperm donor has come to light, Defendants have not told the truth about James Christian Aggeles to anyone who received his sperm, including Plaintiffs in this action.  Defendants continued to withhold relevant information contrary to the declaration on the Xytex website that they would inform Plaintiffs if Defendants acquired **any new information** that might affect the health of their children.  However, despite all that has been revealed about Donor #9623, Defendants have not contacted Plaintiffs to let them know the true about Donor #9623, and how this information could affect the health of Plaintiffs' children.

38.     In fact, after Defendants were alerted to publicly accessible documents that unquestionably proved that James Christian Aggeles was a schizophrenic with an extensive arrest history, Defendants and their representatives and employees continued to sell and promote sperm from Donor #9623.  Defendant J. Todd Spradlin, the Chief Medical and Laboratory Director for Xytex, stated in an e-mail, on **January 11, 2016**, that he had "no information to confirm that Donor 9623 has schizophrenia."  Defendant Spradlin also said, in the same email, that it "would be irresponsible of Xytex to notify clients of unsubstantiated claims."  Defendant Spradlin made these statements despite the fact that publicly accessible, irrefutable, verified medical documents unquestionably proved that Donor #9623, James Christian Aggeles, was a diagnosed schizophrenic.  The Xytex Corporation, and other Defendants here, have all refused to concede the truth about James Christian Aggeles. Instead, Defendants have recklessly pursued their commercials motives with utter disregard for the safety of the Plaintiffs and their children.

39.     Not only has the Xytex Corporation refused to disseminate the truth about James Christian Aggeles to Plaintiffs, or help other recipients of his sperm, it continued to sell the sperm of Donor #9623 after his arrest history and mental illnesses came to light.  All the while, publicly accessible, irrefutable documents unquestionably proved that Donor #9623 was a convicted burglar with a series of mental health illnesses. Nevertheless, the Xytex Corporation has recklessly pursued its commercial motives without any consideration for the lives it was destroying, and this was done in conscious

disregard for the safety of the public, and the persons who purchased sperm from Donor #9623.

40.    Rather than help the persons who received sperm from Donor #9623, and their children who were conceived as a result of the sperm received from Donor #9623, the Xytex Corporation has vowed to "vigorously defend itself."  If Defendants are never held accountable for their reckless, callous, and injurious behavior, they will continue to misrepresent the truth and destroy innocent peoples' lives with impunity.

## FIRST CAUSE OF ACTION
### (Fraud)
## AGAINST ALL DEFENDANTS

41.    All Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

42.    In making the representations set forth herein, Defendants knew them to be false and made them with the intent of inducing Plaintiffs to rely upon said representations and to purchase the sperm of Donor #9623.

43.    Plaintiffs reasonably relied on Defendants' representations in deciding to purchase sperm from Xytex, and, in particular, in deciding to purchase sperm from Donor #9623.

44.    Had Plaintiffs known the true facts, Plaintiffs would not have purchased the sperm of Donor #9623 from Defendants, and Plaintiffs have been harmed as a result of Defendants' deceit and fraud.

45.    All Defendants, and each of them, acted with fraud, malice and oppression and all Plaintiffs are thereby entitled to punitive damages.

WHEREFORE, all Plaintiffs pray for judgment against all DEFENDANTS as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (Negligent Misrepresentation)
## AGAINST ALL DEFENDANTS

46.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

47.    Defendants represented to Plaintiffs that the representations set forth herein were true when they were not true and in so doing, Defendants had no reasonable grounds for believing them to be true when they made the representations in that Defendants had not made reasonable inquiry to ascertain their truth.

48.     Defendants intended that Plaintiffs rely on said representations and Plaintiffs reasonably relied on said representations and said reliance was a substantial factor in causing all Plaintiffs' harm.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

### THIRD CAUSE OF ACTION
### (Products Liability/Strict Liability)
### AGAINST ALL DEFENDANTS

49.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

50.     The semen sold and supplied by Defendants, and each of them, was defective and unsafe at the time it was distributed and used by Plaintiffs in that it was defective as it contained genetic material about which no warnings were given.  These defects caused serious injuries to the user when used as intended and in a foreseeable manner and defendants knew it would be used without inspection.

51.     The aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or scientifically knowable at the time of distribution. Defendants and each of them failed to warn of potential injury and the statistical likelihood that offspring produced by the semen would develop psychosis or other medical and mental health conditions.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## FOURTH CAUSE OF ACTION
### (Products Liability/Negligence)
### AGAINST ALL DEFENDANTS

52.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

53.    At all times herein mentioned, Defendants, and each of them, had a duty to properly test, analyze, inspect, research, distribute, evaluate, review, recommend and provide proper warnings and sell the aforesaid product for its intended and approved use.

54.    At all times relevant herein mentioned, Defendants, and each of them, knew that the product was of such a nature that if it was not properly tested, inspected, labeled, distributed, reviewed, evaluated, marketed, promoted, and recommended, it was likely to injure users.

55.    Defendants and each of them breached their duty by negligently and carelessly recommending, promoting, failing to test, failing to review, failing to evaluate, failing to inspect, and failing to research and acting negligently as set forth above and thereby caused all Plaintiffs' injuries and damages.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## FIFTH CAUSE OF ACTION

**(Breach of Express Warranty)**
**AGAINST ALL DEFENDANTS**

56.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

57.     Defendants, and each of them, made representations about the quality of the semen being sold to Plaintiffs, and presented themselves as experts in the determination of quality and reliability of the said semen, and thereby created a warranty through their oral and written representations.

58.     Said defendants breached their warranty and said breach caused all Plaintiffs losses.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

**SIXTH CAUSE OF ACTION**
**(Breach of Implied Warranty)**
**AGAINST ALL DEFENDANTS**

59.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

60.     Defendants, and each of them, were the sellers of the semen and had reason to know the purpose to which it would be put by Plaintiffs and that Plaintiffs were relying upon said Defendants' expertise, and Plaintiffs so relied to their detriment and sustained the losses set forth herein.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## SEVENTH CAUSE OF ACTION
### (Battery)
### AGAINST ALL DEFENDANTS

61.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

62.     Defendants, and each of them, perpetrated a battery upon Plaintiff Rene Zelt. Defendants, by selling the sperm of a person who did not have the qualities and characteristics that Defendants said he had,   thereby caused Rene Zelt to be inseminated without full and knowing consent.  This action amounts to nonconsensual contact, and is thus, a battery.

63.     In committing a battery upon Plaintiff Rene Zelt, Defendants, and each of them, acted intentionally and with malice and with conscious disregard for the health and safety of Rene Zelt, and the general public, thereby entitling the Plaintiffs to punitive damages.

WHEREFORE, all Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## EIGHT CAUSE OF ACTION
### (Negligence)
### AGAINST ALL DEFENDANTS

64.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

65.     In doing the acts herein alleged, Defendants and each of them, acted carelessly and negligently and recklessly and caused Plaintiffs injuries and damages thereby. In doing so, Defendants, and each of them, acted intentionally and with malice and with conscious disregard for the health and safety of Plaintiffs, and the general public, thereby entitling the Plaintiffs to punitive damages.

WHEREFORE, Plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

### NINTH CAUSE OF ACTION
### (Unfair Business Practices)
### AGAINST ALL DEFENDANTS

66.     Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

67.     Defendants, and each of them, acted in violation of the Georgia Fair Business Practices Act by their unfair and deceptive acts and practices.  These acts included, but were not limited to, representing that certain goods and services, e.g. semen and evaluation of donors, had characteristics and benefits that they did not have, and that

the semen donor in question had characteristics that he did not actually have. Defendants thereby represented that their goods and services were of a particular standard, when they were actually of another standard altogether.

68.    In compliance with the said Act, Plaintiffs, through Counsel, sent a letter demanding relief and informing Defendants that they would seek fees and costs as permitted, injunctive relief and monetary damages and requested cessation of their deceptive business practices, removal of sperm Donor #9623 from their donor list, and increased vigilance and review of donors and a medical monitoring fund for children of Donor #9623.

69.    The violations of said Act entitles Plaintiffs to punitive damages.

WHEREFORE, all plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## TENTH CAUSE OF ACTION
### (Specific Performance)
## AGAINST ALL DEFENDANTS

70.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

71.    Plaintiffs are entitled to specific performance because there was (1) a legally enforceable agreement between all Plaintiffs and Defendants, which was sufficiently certain in its terms; there was (2) adequate consideration for the agreement, and it was a just and reasonable agreement; the (3) Plaintiffs, and each of them, tendered their

performances by purchasing human sperm from the Xytex Corporation; the (4) Defendants breached the agreement because they have failed to honor their obligation to disseminate, to sperm purchasers, significant information that is discovered about a donor; and the (5) Plaintiffs have no adequate remedy at law because, in order to effectively treat and care for their children, they need to know as much as possible about James Christian Aggeles, Donor #9623.  However, Plaintiffs cannot effectively treat their children while Defendants refuse to disseminate what they actually know to be true about James Christian Aggeles.

72.    Before Plaintiffs purchased sperm from the Xytex Corporation, the Xytex Corporation agreed to disseminate significant new information that it learned or discovered about a donor.  Notwithstanding this promise, and the facts that have come to light regarding Xytex Donor #9623's mental health issues, criminal issues, and lack of secondary education, the Xytex Corporation has repeatedly refused to disseminate to Plaintiffs any of the information that can easily be verified by publicly accessible documents.

73.    Thus, Defendants have breached the agreement, and because Plaintiffs have no adequate remedy at law, Defendants should be required to perform their obligations under the legally enforceable agreement and disseminate what they know about James Christian Aggeles to any and all purchasers of sperm that came from Xytex Donor #9623.

WHEREFORE, all plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## ELEVENTH CAUSE OF ACTION
### (False Advertising)
### AGAINST ALL DEFENDANTS

74.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

75.    Defendants, and each of them, presented false or misleading information about James Christian Aggeles, Donor #9623, that was likely to cause confusion, mistake, or deception, and they misrepresented the nature, characteristics, and qualities of the product they provided and sold to the Plaintiffs, namely, sperm from James Christian Aggeles, Xytex Donor #9623.

76.    Plaintiffs were injured by these deceptive advertising practices, and now seek relief for their injuries.

WHEREFORE, all plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## TWELFTH CAUSE OF ACTION
### (Promissory Estoppel)
### AGAINST ALL DEFENDANTS

77.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

78.    Defendants, and each of them, made a series of promises to Plaintiffs in that Defendants promised to rigorously screen donors in various ways that were explicitly stated to Plaintiffs, and Defendants promised Plaintiffs that Defendants would contact Plaintiffs directly in the event that Defendants acquired new information regarding the sperm donor selected by Plaintiffs that might have consequences for the health of Plaintiffs' children. Defendants further made promises to Plaintiffs as to the characteristics and qualities of Donor #9623 and his sperm;

79.    Defendants should have reasonably expected that Plaintiffs would rely on their promises, and Plaintiffs did in fact rely on Defendants' promises and made the decision to purchase sperm from Defendants in reliance on Defendants' promises.

80.    An injustice can be avoided only by the enforcement of the promises and/or compensation for the harm caused by Plaintiffs' detrimental reliance. Further, justice requires that the Court enforce Defendants' promise to provide any and all information to Plaintiffs regarding Donor #9623 that might affect the health of Plaintiffs' children In order to effectively treat and care for their children, Plaintiffs need to know as much as possible about James Christian Aggeles, Donor #9623.

WHEREFORE, all plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## THIRTEENTH CAUSE OF ACTION
### (Unjust Enrichment)
### AGAINST ALL DEFENDANTS

81.    Plaintiffs hereby incorporate by reference, as if fully set forth herein, each and every allegation contained in this Complaint.

82.    Defendants induced Plaintiffs to pay for the sperm of Donor #9623, which did not have the desirable qualities and characteristics as stated by Defendants and was unsuitable for insemination.

83.    Defendants have retained the financial benefit conferred by Plaintiffs. Defendants will be unjustly enriched and justice requires that they be compelled to disgorge the benefit conferred by Plaintiffs.

WHEREFORE, all plaintiffs pray for judgment against DEFENDANTS as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE PLAINTIFFS SEEK RELIEF AS FOLLOWS:

1.    Pain and suffering according to proof;

2.    Financial losses according to proof;

3.    Attorneys fee;

4.    Costs of suit;

5.    Medical Monitoring Fund;

6.    Injunctive Relief; and

7.    Punitive Damages

## **JURY DEMAND**

Plaintiffs each demand trial by struck jury on all issues so triable.

DATED:  November 30, 2017

/s/ James F. McDonough, III.

JAMES F. MCDONOUGH, III.
GA Bar No.:  117088
HENINGER GARRISON DAVIS
3621 Vinings Slope, Suite 4320
Atlanta, GA 30339
Tel: 404-996-0869
Fax: 205-326-3332

W. Lewis Garrison, Jr.
lewis@hgdlawfirm.com
Taylor C. Bartlett*
taylor@hgdlawfirm.com
HENINGER GARRISON DAVIS
2224 First Avenue North
Birmingham, AL 35203
Tel: 205-326-3336
Fax: 205-326-3332


NANCY HERSH*
BRENDAN GANNON*
HERSH & HERSH
A Professional Corporation
601 Van Ness Avenue, Suite 2080
San Francisco, CA 94102-6396
(415) 441-5544

*PHV's forthcoming

Attorneys for Plaintiffs
Rene Zelt & Trayce Zelt

## **CERTIFICATE OF COMPLIANCE**

This is to certify that the foregoing has been prepared using Times New Roman 14 point font.

This 30th day of November 2017.

/s/ James F. McDonough, III.
JAMES F. MCDONOUGH, III.
GA Bar No.:  117088
HENINGER GARRISON DAVIS, LLC
3621 Vinings Slope, Suite 4320
Atlanta, GA 30339
Tel: 404-996-0869
Fax: 205-326-3332