IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RENE ZELT, et al.,

    Plaintiffs,

      v.

XYTEX CORPORATION
a Georgia Corporation, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:17-CV-4851-TWT

**ORDER**

This is a wrongful birth case. It is before the Court on the Defendants Xytex Corporation, Xytex Cryo International LTD, J. Todd Spradlin, and Mary Hartley's Motion to Dismiss [Doc. 2]. For the reasons set forth below, the Defendants' Motion to Dismiss is GRANTED.

**I. Background**

The Plaintiffs Rene Zelt and Trayce Zelt reside in Texas and have two children, A.Z. and B.Z., who were both conceived by means of artificial insemination with semen purchased from the Defendant Xytex Corporation.[1] The Defendant Xytex Corporation is a for-profit sperm bank with its principal place of business in Georgia.[2] It is a subsidiary of the Defendant Xytex Cryo

---

[1] Compl. ¶ 1.

[2] *Id.* ¶ 2.

International LTD.[3] The individual Defendants were associated with the Atlanta office of Xytex in various ways.[4]

On October 18, 2000, James Aggeles applied to be a sperm donor with Xytex.[5] On his application, Aggeles claimed that he had a Bachelor's Degree, a Master's Degree, and that he was working toward his Ph.D. in artificial intelligence.[6] None of this was true, however, as Aggeles had actually dropped out of school at that time.[7] Prior to applying to be a sperm donor, Aggeles had also been hospitalized and diagnosed with psychotic schizophrenia, narcissistic personality disorder, and significant grandiose delusions.[8] But during Aggeles's first visit to Xytex, the Defendant Hartley suggested to him that more educated donors did better selling their sperm.[9] As a result, Aggeles filled out his application falsely by inflating his educational background and lying about his mental health history.[10]

Despite Xytex's claim that all applicants went through a rigorous

---

[3] *Id.* ¶ 3.

[4] *Id.* ¶¶ 4-8.

[5] *Id.* ¶ 12.

[6] *Id.* ¶ 13.

[7] *Id.* ¶ 21.

[8] *Id.* ¶¶ 20-21.

[9] *Id.* ¶ 21.

[10] *Id.*

qualification procedure that takes months to complete, including a medical review and regular updates to their medical and criminal histories, Aggeles was approved as a donor within two weeks.[11] Xytex presented this false information to its customers through Aggeles's public profile.[12] The Complaint alleges that Aggeles was only given a ten minute physical examination, during which no physical or mental health history was discussed.[13] After Aggeles was approved as a sperm donor, he was hospitalized numerous times for mental health reasons, and was arrested on numerous occasions.[14] Between 2000 and 2016, Aggeles became one of Xytex's most popular donors.[15] Families often desired the sperm of highly educated and accomplished people, and Xytex promoted Aggeles as such a donor based upon the information in his application. During those years, Aggeles became the biological father of at least thirty-six children through Xytex's sale of his sperm, including the Plaintiffs' two children.[16]

The Plaintiffs, a same-sex couple, decided in early 2006 to conceive children through artificial insemination.[17] They discovered Xytex's website after

---

[11]   *Id.* ¶¶ 18, 22.

[12]   *Id.* ¶ 13.

[13]   *Id.* ¶ 22.

[14]   *Id.* ¶ 23.

[15]   *Id.* ¶ 24.

[16]   *Id.*

[17]   *Id.* ¶ 29.

researching online.[18] The Plaintiffs sought to find a sperm donor with verified medical, physical, and personality attributes that complemented their own attributes.[19] While conducting research, the Plaintiffs were impressed by Xytex's sperm donor qualification procedures.[20] When the Plaintiffs reached out to Xytex by phone, Xytex's representatives told them that Aggeles was a very popular donor, and that his sperm was rarely available.[21] As a result of Xytex's representations, the Plaintiffs purchased Aggeles's sperm.[22] Using Aggeles's sperm, the Plaintiff Rene Zelt gave birth to A.Z. on March 17, 2007, and then gave birth to B.Z. on December 11, 2009.[23]

In December 2015, the Plaintiffs conducted an internet search of their donor, and discovered, through publicly-accessible documents, that most of Xytex's representations concerning Aggeles were not true.[24] The Plaintiffs learned that Aggeles had been diagnosed with schizophrenia, that he had dropped out of college, and that he had pleaded guilty to residential burglary.[25]

---

[18] *Id.* ¶ 29.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.* ¶ 31.

[24] *Id.* ¶ 32.

[25] *Id.* ¶ 33.

They also learned that the photographs on his public profile had been altered to remove a large facial mole.[26] All of the information about Aggeles's educational and criminal history was easily accessible through a simple internet search.[27] As a result, the Plaintiffs filed their Complaint on November 30, 2017, alleging thirteen different causes of action against the Defendants, including fraud, negligence, and breach of warranty.[28] The Defendants now move to dismiss the Complaint for failure to state a claim.

## II. Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief.[29] A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely."[30] In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as

---

[26] *Id.*

[27] *Id.*

[28] This action is one of numerous cases arising out of Xytex's sale of Aggeles's semen. This Court has previously presided over, and dismissed, two similar cases against these Defendants. *See Doe 1 v. Xytex Corp.*, 1:16-CV-1453-TWT; *Doe v. Xytex Corp.*, 1:16-CV-1729-TWT.

[29] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009); FED. R. CIV. P. 12(b)(6).

[30] *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007).

true and construe them in the light most favorable to the plaintiff.[31] Generally, notice pleading is all that is required for a valid complaint.[32] Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.

### III. Discussion

The Defendants' primary argument is that all of the Plaintiffs' claims are derivative of a wrongful birth action, and because wrongful birth claims are not recognized in Georgia, the Plaintiffs' claims must be dismissed.[33] In other words, the Defendants argue that all of the Plaintiffs' claims fundamentally stand on the assertion that if the Plaintiffs had known the truth about Aggeles, the Plaintiffs' two children would not have been born. The Plaintiffs, for their part, argue that this case is not one for wrongful *birth*, but rather for wrongful *conception*.[34]

In Georgia, wrongful conception claims generally arise when a steriliza-

---

[31] *See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination").

[32] *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985), *cert. denied*, 474 U.S. 1082 (1986).

[33] Defs.' Mot. to Dismiss, at 5-8.

[34] Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 5.

tion or abortion procedure goes wrong and a live birth unintentionally results.[35] In such a case, the measure of damages allows "recovery of expenses for the unsuccessful medical procedure which led to conception or pregnancy, for pain and suffering, medical complications, costs of delivery, lost wages, and loss of consortium."[36] By contrast, wrongful birth claims normally arise when the parents contend they would have aborted the child if they had been fully aware of the child's condition.[37] While wrongful conception claims have been allowed in Georgia, wrongful birth claims have not.[38] The Plaintiffs argue that the functional differences between these two torts are (1) the timing of the tort (i.e., pre- or post-conception), and (2) whether a defendant's actions directly or indirectly caused the injury. According to the Plaintiffs, when the wrong occurs before conception and directly causes the harm, as in failed sterilization cases, the tort is allowed.[39] And when the wrong occurs after conception and indirectly causes the harm, as in failure-to-diagnose cases, the tort is disallowed.

---

[35] *Fulton-DeKalb Hosp. Auth. v. Graves*, 252 Ga. 441, 442 (1984).

[36] *Id.* at 443.

[37] *Atlanta Obstetrics & Gynecology Grp. v. Abelson*, 260 Ga. 711, 713 (1990).

[38] *Id.* at 714; *Campbell v. United States*, 962 F. 2d 1579, 1583 (11th Cir. 1992) ("In the instant case, while Georgia has a statute which permits injured parties to recover for medical malpractice committed by private parties, this statute does not permit recovery for the tort called wrongful birth.").

[39] While the Court does not need to address them here, there are also numerous causation problems with the Plaintiffs' argument.

The Plaintiffs are incorrect. The reason why Georgia courts have looked on wrongful birth claims with disfavor is not because of the timing of the tort or the causal link between the defendant and the harm. The true difference between the two torts is the measure of damages. Wrongful birth claims are disfavored because they require the court to decide between the value of a life with disabilities and the value of no life at all. The Georgia courts are "unwilling to say that life, even life with severe impairments, may ever amount to a legal injury."[40] In this case, the Plaintiffs essentially claim that had the Defendants been truthful with them about Aggeles's history, they would not have used his sperm and their children would not have been born.

The Plaintiffs also contend that this action is not one for wrongful birth because the relevant comparison for damages in this case is not between a child being born with a hereditary predisposition for mental illness, and nonexistence of the child.[41] The Plaintiffs argue that, instead, the relevant comparison is between the conception of a child with Aggeles as the father, and conception of a child from a donor who had been appropriately screened.[42] However, this comparison still asks the Court to decide between the value of a child's life with Aggeles as the father (and all of the resulting hereditary problems), and the

---

[40] *Abelson*, 260 Ga. at 715.

[41] Pls.' Br. in Opp'n to Defs.' Mot. to Dismiss, at 12.

[42] *Id.*

value of a child's life with a different donor as the father (without these problems). And, the Plaintiffs, through this comparison, admit that they would not have had their children had they known about Aggeles's history. These are the exact reasons that Georgia does not recognize an action for wrongful birth.

Finally, the Plaintiffs argue that the Defendants ask this Court to create a broad, new "immunity" from liability for negligent and reckless sperm banks, and that "[j]udicial creation of such immunity would usurp legislative power."[43] However, exactly the opposite is true. The Plaintiffs ask this Court to allow a cause of action that the legislature has never recognized, and which the Georgia Supreme Court has explicitly rejected. This Court would "usurp legislative power" by doing so. The legislature, and not this Court, is the proper forum for addressing the allegedly negligent or reckless failure of sperm banks to screen sperm donors.[44]

## IV. Conclusion

For the reasons stated above, the Defendants' Motion to Dismiss [Doc. 2] is GRANTED.

---

[43] *Id.* at 12.

[44] *See Abelson*, 260 Ga. at 714 n.5 (noting that "there needs to be a thorough assessment of all of the public policy considerations involved in recognition of 'wrongful birth' actions as well as a prospective establishment of the contours of the action, if it is to be recognized in this state" and concluding that "[s]uch a task is best suited to the legislature").

SO ORDERED, this 22 day of February, 2018.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge